RECEIVED
JAN - 9 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| MICHAEL K. DUBOIS | CIVIL ACTION NO. 05-0124 |
| VS. | JUDGE DOHERTY |
| JO ANNE BARNHART, Commissioner Social Security Administration | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED**.

### *Background*

Born on December 27, 1959, Michael Dubois ("Dubois") is 46 years old and has a sixth grade education. Dubois worked in the past as a heavy equipment operator. On January 13, 2003, Dubois applied for disability and supplemental security income benefits alleging disability since May, 2002 due to leg, knee, neck, hand, and back pain, hernias, cancer surgery, mental deficits, and swallowing and heart problems.[1] Dubois's application was denied on initial review and an administrative hearing was held on August 24, 2004.[2] In an opinion dated September 7, 2004, the ALJ found that Dubois is able to perform the exertional requirements of sedentary work and is not disabled.[3] The Appeals Council denied review and Dubois timely filed this appeal.

---

[1] Tr. 92.

[2] Tr. 16-42.

[3] Tr. 15C.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

## *Procedure for Analysis of Impairments and the ALJ's Findings*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.[4]

---

[4] "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir.1985).

mem: T:\Mimi-CCG\050124.Dubois.SS.RR.2.wpd1/4/06

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

When a mental disability claim is made, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim. Essentially, this procedure substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings. The Regulations require:

> [T]he ALJ to identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment. Furthermore, § 404.1520a(e) provides that the ALJ must document his application of this technique to the claimant's mental impairments.

Satterwhite v. Barnhart, 44 Fed.Appx. 652 (5th Cir. 2002) (unpublished).[5]

---

[5] For a succinct summary of the current law, see Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004):

   1. The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment.
   2. If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation. See C.F.R. §404.1520a(c)(3).
   3. When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings.
   4. When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity.

The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.* Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

In the instant case, the ALJ determined that Dubois's back, neck, and coronary artery disease are severe impairments.[6] The ALJ assessed Dubois's residual functional capacity ("RFC") and concluded that Dubois could perform sedentary work with limited overhead reaching, occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and avoiding dangerous machinery and heights. Since the ALJ concluded that Dubois could perform substantially all of the exertional requirements of sedentary work, and he did not find that Dubois non-exertional limitations affect his ability to perform sedentary work, he applied the Medical Vocational Guidelines, and concluded that Dubois was not disabled.[7]

## *Assignment of Errors*

Dubois alleges the following grounds for appeal: 1) the ALJ erred in his severity analysis; and 2) the ALJ erred in concluding that plaintiff's complaints of pain were only partially credible.

## *Findings and Conclusion*

### Medical History

In 1994, Dubois was in an automobile accident and injured his right knee. He was treated by Dr. John Cobb, an orthopedist, from 1994-1995 and underwent arthrospopic surgery of his knee.[8]

---

[6] Tr. 13.

[7] Although this issue was not presented, the undersigned notes that the ALJ did not err in his Step 5 analysis. The presence of nonexertional limitations generally precludes the use of the Guidelines. Fraga v. Bowen, 810 F.2d 1296 (5th Cir. 1987). If those impairments, however, do not have a significant effect on the claimant's residual functional capacity, the Guidelines may be applied. Id. Social Security Ruling 96-9P states:
> Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work.

As Dubois' non-exertional limiations were postural in nature, they would not necessarily affect his ability to perform sedentary jobs. Accordingly, the presence of these nonexertional impairment did not preclude the use of the Guidelines.

[8] Tr. 398-430.

In August, 2000, Dubois was diagnosed with squamous cell carcinoma of the tonsil, which required laryngoscopy, right tonsillectomy, and modified neck dissection.[9] Dr. L.A. Hauskins, an oncologist, administered radiation treatment to Dubois until April, 2001, at which time Dubois began treatment with Dr. Luis Meza, also an oncologist.[10] Dr. Meza found "no need for any form of therapy at this point in time, unless there are signs of progressive disease."[11] Dubois was examined periodically by Dr. Meza to insure the cancer did not recur.[12]

Treatment records from Lafayette General Medical Center ("LGMC") and Dr. Jon Leleux, a cardiologist, show that in May, 2000, Dubois had a stent inserted in his right coronary artery.[13] On January 25, 2002, Dubois experienced chest pain and had an abnormal stress test, however, x-rays were normal.[14] On January 29, 2002, it was noted that Dubois has coronary artery diseased, hyperlipidemia, and history of transient ischemic attacks (TIA).[15] Dubois underwent elective catheterization, which revealed "his right coronary artery had a mild 80% lesion." On follow-up examination on February 15, 2002, Dubois had no cardiac complaints and was released to return to work.[16] On May 13, 2002, Dubois was admitted to LGMC with complaints of chest pain, shortness of breath, and occasional TIA symptoms.[17] An angiogram

---

[9] Tr. 135-137, 150. Squamous cell cancer is a malignant skin cancer that affects the middle layer of the skin. *See* http://www.nlm.nih.gov/medlineplus/ency/article/000829.htm

[10] Tr. 167-179, 235-237.

[11] Tr. 237.

[12] Tr. 192-237.

[13] Tr. 304.

[14] Tr. 299-300.

[15] Tr. 294.

[16] Tr. 290.

[17] Tr. 281.

showed no significant carotid or cerebral disease.[18] While hospitalized, Dubois was examined by Dr. Leopoldo Alvare, a neurologist, who felt that he was not having TIAs but that "perhaps this was a complex partial seizure."[19] An EEG was normal. Dubois was discharged on May 15, 2002 in stable condition.[20] On May 5, 2003, Dubois underwent a cardiac catheterization which revealed in-stent restenosis in the right coronary artery and "a 40% lesion distal to that with normal ventricular function." Dr. Leleux stated, "He will be treated with medications."[21]

On September 19, 2002, Dubois was examined at Jennings American Legion Hospital for neck pain after an altercation at work.[22] A CT scan of the cervical spine was normal. On October 17, 2002, Dubois was examined by Dr. Keith DeSonier, a general physician, complaining of neck pain and difficulty swallowing.[23] On October 22, 2002, a modified barium swallow study was conducted which showed that Dubois experienced difficulty swallowing, however, this was relieved when he tucked his chin and turned his head to the left.[24] An MRI of the cervical spine taken on October 24, 2002 was normal.[25]

On April 14, 2003, Dubois was examined by Dr. Cobb with complaints of neck, right shoulder, back and right hip pain arising from the incident on September 19, 2002.[26] Dr. Cobb's impression was that Dubois had "Post-traumatic pain syndrome with referred pain into the right

---

[18] Tr. 279.

[19] Tr. 279-280.

[20] Tr. 279.

[21] Tr. 246.

[22] Tr. 341-348.

[23] Tr. 188.

[24] Tr. 185/186.

[25] Tr. 183.

[26] Tr. 432-437.

7

shoulder, superimposed on prior radical neck surgery."[27] Dubois also had post-traumatic lumbar pain and "what sounds like radiculitis in the right leg."[28] Dubois underwent physical therapy for his neck and back pain. On May 28, 2003, Dr. Cobb noted that Dubuis did not have any neurological deficits, although he continued to complaint of neck and back pain.[29] Dr. Cobb concluded that, "I am really unable to offer him very much. If he is interested in pain management, I think that would be a good solution for him until he is able to get orthopedic care."[30]

On April 24, 2003, at the request of Disability Determination Services ("DDS"), Dubois was examined by Dr. Samuel Stagg, an internist.[31] Dr. Stagg noted that Dubois had a complicated medical history and complained of neck, back, and leg pain, and had difficulty speaking and swallowing. Dr. Stagg noted that Dubois had depression, secondary to all of his impairments. In May, 2003, a medical expert completed a Physical Residual Functional Capacity Assessment, finding that Dubois could lift 20 pounds occasionally, 10 pounds frequently, occasionally climb ramps and stairs but never ladders or ropes, occasionally balance, stoop, kneel, crouch, or crawl, he had limited ability to work overhead, and should avoid hazardous conditions.[32]

---

[27] Tr. 432.

[28] Tr. 432.

[29] Tr. 431.

[30] Tr. 431.

[31] Tr. 238-240.

[32] Tr. 305-312.

On May 29, 2003, a Psychiatric Review Technique was conducted by the Social Security Administration ("SSA").[33] The examiner found that Dubois did not have a severe mental impairment.

In January, 2004, Dubois underwent routine scans of his neck, chest, abdomen, pelvis and head at University Medical Center ("UMC") due to his history of cancer.[34] The neck x-ray had an irregularity, and therefore clinical correlation was recommend. On April 12, 2004, a laryngoscopy with biopsy was performed, which show no evidence of malignancy.[35]

**Disability Finding**

Dubois maintains that the ALJ erred in not finding him disabled. Dubois argues:

> The third step of the sequential evaluation concerns whether the claimant's condition meets the requirements or equals the level of severity for any impairment listed in the appropriate regulations. The ALJ found that Mr. Dubois' condition does not meet the level of severity required for a Required Impairment. That decision was erroneous and must be reversed.[36]

Dubois does not identify which of the Listings at 20 C.F.R. Pt. 404, Subpt. P, App. 1, Subpart P he claims to meet, nor does provide any argument concerning how he meets a listed impairment or how the ALJ erred in his determination. Accordingly, Dubois has not shown that the ALJ's determination that he does not meet the requirements of a Listed Impairment is unsupported by substantial evidence. Moreover, although Dubois does not argue that the ALJ erred in his Step 2 severity determination, i.e., whether the impairments have a minimal effect on the individual's ability to work,[37] the undersigned notes that the ALJ did not err in this regard.

---

[33] Tr. 313-326.

[34] Tr. 449-153.

[35] Tr. 439, 458-460.

[36] Rec. Doc. 5 at p. 3, emphasis omitted.

[37] Stone, supra.

The ALJ concluded that Dubois' neck, back, and heart problems are severe impairments, and in his residual functional capacity assessment, the ALJ concluded that Dubois could only perform the physical demands of sedentary work. Thus, the ALJ considered Dubois impairments to be significant and restricted his functional capacity to sedentary work. Moreover, although there are notations that he is depressed, secondary to his other impairments, there is no evidence of record that Dubois sought treatment for depression, nor has any medical source found that Dubois is limited in any way by depression. Accordingly, the undersigned concludes that the ALJ's severity determination is supported by substantial evidence of record.

Turning to Dubois' allegation that the ALJ erred in discounting his allegations of disabling pain, the Fifth Circuit has held that pain, in and of itself, can be a disabling condition, but only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir.1991). The ALJ has discretion to determine the disabling nature of subjective complaints of pain, "at least where the medical evidence is inconclusive." Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). The ALJ's determination in this regard is entitled to considerable deference. Id. However, if uncontroverted medical evidence reveals a basis for the subjective complaints of pain, the "ALJ's unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review . . . at least where the ALJ does not on an articulated basis weigh the objective medical evidence in assigning reasons for discrediting the claimant's subjective complaints of pain." Cook v. Heckler, 750 F.2d at 395.

Here, the ALJ noted that Dubois testified that he could not walk or stand for long periods of time, that he has difficulty swallowing and concentrating, tries to do yard work, and grocery

shops with his wife.[38] The ALJ also considered the medical evidence, which does not contain any mention of limitations on Dubois ability to perform the requirements of sedentary work. Additionally, the ALJ noted that Dubois did not always complain of serious pain to his physicians, and he described himself as being able to climb two flights of stairs. The ALJ concluded, therefore, that Dubois did not have disabling pain.

Considering the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision to discredit Dubois's subjective complaints of disabling pain and discomfort. By limiting Dubois from performing the heavy duty work that he performed in the past, and restricting him to only sedentary work, the ALJ acknowledged that Dubois was in pain that limited his physical abilities. There is substantial evidence in the record to support the ALJ's conclusion that, although Dubois suffers from severe impairments that cause pain, he does not suffer from disabling pain, which prevents him from performing the requirements of sedentary work. Accordingly, I find that the ALJ did not err in discounting Dubois's subjective complaints of disabling pain.

### *Conclusion*

The undersigned finds that substantial evidence of record supports the ALJ's decision. Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may

---

[38] Tr. 14.

11

respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on January 9th, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

COPY SENT:
DATE: 1-9-06
BY: CM
TO: men
RFD/ms